N6EVBRIP

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

        v.                              21 Cr. 65 (LJL)

COLE JAMES BRIDGES,

           Defendant.                    Plea

------------------------------x

                              New York, N.Y.
                              June 14, 2023
                              12:10 p.m.

Before:

               HON. LEWIS J. LIMAN,

                        District Judge

                   APPEARANCES

DAMIAN WILLIAMS,
    United States Attorney for the
    Southern District of New York
SAMUEL S. ADELSBERG
MATTHEW J. C. HELLMAN
    Assistant United States Attorneys

DEBORAH A. COLSON
    Attorney for Defendant

N6EVBRIP

(Case called)

THE DEPUTY CLERK:  Starting with counsel for the government, please state your appearance for the record.

MR. ADELSBERG:  Good afternoon, your Honor.

Sam Adelsberg, on behalf of the United States.  And I'm joined at counsel's table by Matthew Hellman.

THE COURT:  Good afternoon.

MS. COLSON:  Good afternoon, your Honor.

Deborah Colson, on behalf of Mr. Bridges.

THE COURT:  Good afternoon, Ms. Colson.

Good afternoon, Mr. Bridges.

And Ms. Colson, I understand that the defendant's father is here; is that correct?

MS. COLSON:  He is.  He's in the second row in the blue shirt.

THE COURT:  Okay.  I'm glad that we were able to schedule this so that he could be in attendance.  And at the conclusion of the proceedings, if it's okay with the marshals, I'll ask that while the defendant is in the well of the court, and with his father in the gallery, they be permitted to say hello to one another.

I gather, Ms. Colson, that you have an application?

MS. COLSON:  I do, your Honor.

Mr. Bridges would like to withdraw his previously entered plea of not guilty, and enter a plea of guilty to

N6EVBRIP

Counts One and Two of the indictment.

THE COURT:  Okay.  All right.

Let me address myself to you, Mr. Bridges.

I have been informed by Ms. Colson just now that you wish to plead guilty to Counts One and Two of the indictment 21 Crim. 65; is that correct?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  Before I accept your guilty plea, sir, I'm going to ask you certain questions so that I can establish to my satisfaction that you wish to plead guilty because you are guilty and not for some other reason; and also to establish that you know what you will be giving up by pleading guilty.

If you do not understand any of my questions or if you want to consult with your lawyer at any time for any reason, just let me know, and I will give you as much time as you need to do that because it is essential in order to have a valid plea that you understand each question before you answer.

Do you understand that?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  Mr. Fishman, would you please swear Mr. Bridges.

(Defendant sworn)

THE COURT:  You can be seated.

Mr. Bridges, you are now under oath.  What that means is that if you answer any of my questions falsely, you may be

N6EVBRIP

prosecuted for the separate crime of perjury.

Do you understand that?

THE DEFENDANT: Yes, your Honor.

THE COURT: What is your full name.

THE DEFENDANT: Cole James Bridges, your Honor.

THE COURT: Can you maybe try to put the microphone closer to your mouth and speak up.

How old are you, sir?

THE DEFENDANT: 23, your Honor.

THE COURT: And how far did you go in school?

THE DEFENDANT: I graduated high school, your Honor.

THE COURT: Where was that?

THE DEFENDANT: In Clarksville, Tennessee.

THE COURT: Tennessee.

Have you ever been treated or hospitalized for any mental illness?

THE DEFENDANT: Yes, your Honor.

THE COURT: What was that?

THE DEFENDANT: Suicide.

THE COURT: And how long ago was that?

THE DEFENDANT: Back in 2019.

THE COURT: Okay.

Are you currently under the care of a doctor or a psychiatrist?

THE DEFENDANT: No.

N6EVBRIP

THE COURT:  Have you recently been under the care of a doctor or a psychiatrist?

THE DEFENDANT:  Yes.

THE COURT:  How recently?

THE DEFENDANT:  Few months ago, your Honor.

THE COURT:  How many months ago?

THE DEFENDANT:  A few months ago.

THE COURT:  A few months ago?  Okay.

And are you taking any medication for -- well, what kind of treatment were you seeing a doctor for a few months ago?

THE DEFENDANT:  I was on medication when I was first arrested, and I was in MCC.  I was on two kinds of psych medications, Trazodone and Prozac, but I am not on those medications anymore.

THE COURT:  Okay.  The fact that you were on those medications in the past, does that affect your ability to understand what's going on today?

THE DEFENDANT:  No, your Honor.

THE COURT:  Does it affect your ability to make a decision with respect to what's going on today?

THE DEFENDANT:  No.

THE COURT:  Have you ever been treated or hospitalized for any type of addiction, including drug or alcohol addiction?

THE DEFENDANT:  No, your Honor.

N6EVBRIP

THE COURT:  Have you taken any drugs, medicine, or pills, or drunk any alcoholic beverages in the past two days?

THE DEFENDANT:  No.

THE COURT:  Is your mind clear today?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  Do you understand what's happening today?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  Ms. Colson, do you have any doubt as to the defendant's competence to plead at this time?

MS. COLSON:  I do not.

THE COURT:  Mr. Adelsberg, do you have any doubt as to the defendant's competence to plead at this time?

MR. ADELSBERG:  No, your Honor.

THE COURT:  On the basis of Mr. Bridges' responses to my questions, my observations of his demeanor here in court today, and the representations of counsel, I find that Mr. Bridges, the defendant, is fully competent to enter an informed plea of guilty at this time.

Now, Mr. Bridges, have you received a copy of the indictment containing the charges against you?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  And have you read it?

THE DEFENDANT:  Yes.

THE COURT:  Have you had enough of a chance to discuss with your lawyer the charges to which you intend to plead

N6EVBRIP

guilty and any possible defenses to those charges?

THE DEFENDANT:  Yes.

THE COURT:  Have your lawyers explained to you the consequences of entering a plea of guilty?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  Are you satisfied with the representation you've received from your lawyers?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  So now, sir, I'm going to explain to you certain constitutional rights that you have.  These are rights that you will be giving up if you enter a guilty plea.  Please listen carefully to what I am about to say.  If you do not understand something, stop me, and your lawyer or I will explain the matter more fully.  Do you understand that?

THE DEFENDANT:  Yes.

THE COURT:  Okay.

Under the Constitution and laws of the United States, you have the right to plead not guilty to the charges in the indictment.  Do you understand that?

THE DEFENDANT:  Yes.

THE COURT:  If you did plead not guilty, you would be entitled to a speedy and public trial by a jury on the charges contained in the indictment.  Do you understand that?

THE DEFENDANT:  Yes.

THE COURT:  At a trial, you would be presumed to be

N6EVBRIP

innocent and the government would be required to prove you guilty by competent evidence beyond a reasonable doubt before you could be found guilty.  Do you understand that?

THE DEFENDANT:  Yes.

THE COURT:  A jury of 12 people would have to agree unanimously that you were guilty, and you would not have to prove you were innocent if you were to go to trial.

Do you understand that?

THE DEFENDANT:  Yes.

THE COURT:  At that trial and at every stage of your case, you would be entitled to be represented by a lawyer.  If you could not afford a lawyer, one would be appointed at public expense free of cost or any charge to you to represent you.

Do you understand that?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  During a trial, the witnesses for the government would have to come to court and testify in your presence.  Your lawyer could cross-examine the witnesses for the government, object to evidence offered by the government, and offer evidence on your own behalf if you so desired.  And you would have the right to have subpoenas issued or other process used to compel witnesses to testify in your defense.

Do you understand that?

THE DEFENDANT:  Yes.

THE COURT:  At a trial, although you would have the

N6EVBRIP

right to testify if you chose to do so, you would also have the right not to testify.  And if you decided not to testify, no one, including the jury, could draw any inference or suggestion of guilt from the fact that you did not testify.

Do you understand that?

THE DEFENDANT:  Yes.

THE COURT:  Now, have you had a full opportunity to discuss with your lawyers whether there are any pretrial motions you could make or any basis to seek suppression of some or all of the evidence against you on the ground that your constitutional rights were violated?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  And do you understand that by pleading guilty, you are giving up your right to seek suppression of any of the evidence against you?

THE DEFENDANT:  Yes.

THE COURT:  If you were convicted at a trial, you would have the right to appeal that verdict.

Do you understand that?

THE DEFENDANT:  Yes.

THE COURT:  Even now as you are entering this plea, you have the right to change your mind and plead not guilty and go to trial on the charges contained in the indictment.

Do you understand that?

THE DEFENDANT:  Yes.

N6EVBRIP

THE COURT:  If you plead guilty and if I accept your plea, you will give up your right to a trial and the other rights I have just discussed, other than the right to a lawyer, which you have regardless of whether or not you plead guilty. But there will be no trial, and I will enter a judgment of guilty and sentence you on the basis of your plea after I've considered a presentence report and whatever submissions I get from your lawyers and the lawyer for the government.  There will be no trial and no appeal with respect to whether the government could use the evidence it has against you or with respect to whether you did or did not commit the crimes charged in the indictment.  Do you understand that?

THE DEFENDANT:  Yes.

THE COURT:  If you plead guilty, you will also have to give up your right not to incriminate yourself, because I will ask you questions about what you did in order to satisfy myself that you are guilty as charged, and you'll have to admit and acknowledge your guilt.  Do you understand that?

THE DEFENDANT:  Yes.

THE COURT:  Do you understand each and every one of these rights?

THE DEFENDANT:  Yes.

THE COURT:  And, Mr. Bridges, are you willing to give up your right to a trial and the other rights I've just discussed with you?

N6EVBRIP

THE DEFENDANT:  Yes, your Honor.

THE COURT:  Now, let me discuss with you, sir, the nature of the charges against you and the possible consequences to you of the plea of guilty.

Do you understand that you are charged in Count One with attempting to provide material support or resources to a foreign terrorist organization, namely, ISIS, in violation of 18 U.S.C., Section 2339B and 2; and in Count Two, attempting to murder U.S. service members, in violation of 18 U.S.C., Sections 1114 and 2?

Do you understand that?

THE DEFENDANT:  Yes.

THE COURT:  Mr. Adelsberg, would you please state the elements of the offenses in question.

MR. ADELSBERG:  Yes, your Honor.

Your Honor, for Count One, providing material support to ISIS, the government must prove three elements beyond a reasonable doubt:

First, that the defendant attempted to provide material support or resources as defined in Title 18, U.S. Code, 2239A(b)(1), to a designated foreign terrorist organization, here, ISIS.

Second, that the defendant knew that the organization had been designated as a foreign terrorist organization or that the organization had engaged or was engaging in terrorist

N6EVBRIP

activity or terrorism.

Then third, that at least one of the jurisdictional predicates set forth in Section 2339B(d) is met.  And here, for purposes of this plea, one of the jurisdictional predicates includes that the defendant is a national of the United States.

For Count Two of the indictment, which charges attempted murder of U.S. service members, the government must prove beyond a reasonable doubt the following three elements:

First, that the defendant intended to murder any officer or employee or any person assisting such officer or employee of the United States or of any agency in any branch of the United States Government.

Second, that the defendant intended that such murder be committed while such officers or employees were engaged in the performance of their official duties or on account of the performance of such duties or on account of the assistance provided by persons assisting them in such duties.

And third, that the defendant did some act that was a substantial step in an effort to bring about or accomplish that crime.

For both of these statutes, the government would also be required to prove venue being proper in this district by a preponderance of the evidence.

THE COURT:  Thank you, Mr. Adelsberg.

Mr. Bridges, were you able to follow what the

N6EVBRIP

prosecutor said?

THE DEFENDANT:  Yes.

THE COURT:  And do you understand that if you were to go to trial, the government would have to prove all of those elements beyond a reasonable doubt, and would have to prove venue in this district by a preponderance of the evidence?

THE DEFENDANT:  Yes.

THE COURT:  Now, I'm going to tell you the maximum possible penalties for the crimes charged in the indictment. "The maximum" means the most that can be possibly imposed.  It doesn't mean that that is what you necessarily will receive. But you have to understand that by pleading guilty, you are exposing yourself to the possibility of receiving any combination of punishments up to the maximum I'm about to describe.  Do you understand that?

THE DEFENDANT:  Yes.

THE COURT:  First, I'm going to tell you about the possible restrictions on your liberty.

The maximum term of imprisonment for the crime charged in Count One is 20 years, which could be followed by supervised release of up to life.  The maximum term of imprisonment for the crime charged in Count Two is also 20 years, which can be followed by a term of supervised release of life.

"Supervised release" means you will be subject to supervision by the probation department.  There will be rules

N6EVBRIP

of supervised release you'll have to follow; and if you violate those rules, you can be returned to prison without a jury trial to serve additional time, with no credit for the time you served in prison as a result of your sentence, and no credit for any time spent on post-release supervision.

Do you understand that?

THE DEFENDANT:  Yes.

THE COURT:  And do you understand that it is possible, taking all of the counts together, that you could be sent to prison for a total of 40 years?

THE DEFENDANT:  Yes.

THE COURT:  You should also understand, sir, that there is no parole in the federal system; and that if you are sentenced to prison, you will not be released early on parole. There is a limited opportunity to earn credit for good behavior, but you'll have to serve at least 85 percent of the time you're sentenced to.  Do you understand that?

THE DEFENDANT:  Yes.

THE COURT:  Second, in addition to these restrictions on your liberty, the maximum possible punishment includes certain financial penalties.  Let me describe those to you.

The maximum allowable fine on each of Counts One and Two is $250,000 or twice the gross pecuniary gain derived from the offense, or twice the gross pecuniary loss to persons other than yourself, whichever is greater.

N6EVBRIP

So taking the two counts together, the maximum fine is $500,000 or twice the gross pecuniary gain derived from the offenses, or twice the gross pecuniary loss to persons other than yourself, whichever is greater.

Do you understand all of that?

THE DEFENDANT:  Yes.

THE COURT:  In addition, sir, I can order restitution to any person or entity injured as a result of your criminal conduct.  Do you understand that?

THE DEFENDANT:  Yes.

THE COURT:  And finally, I must also order a mandatory special assessment of $100 on each count, for a total of $200.

Do you understand that?

THE DEFENDANT:  Yes.

THE COURT:  Do you understand that these are the possible maximum financial penalties?

THE DEFENDANT:  Yes.

THE COURT:  Are you a United States citizen, sir?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  Do you understand that as a result of your guilty plea, you may lose certain valuable civil rights, to the extent that you have them or could otherwise obtain them now, such as the right to vote, the right to hold public office, the right to serve on a jury, and the right to possess any kind of firearm?  Do you understand that?

N6EVBRIP

THE DEFENDANT:  Yes.

THE COURT:  Are you serving any other sentence, state or federal, or being prosecuted in state court for any crime?

THE DEFENDANT:  No, your Honor.

THE COURT:  Do you understand that if your lawyer or anyone else has attempted to predict for you what your sentence will be, that their prediction could be wrong?

No one, not your lawyer, not the government's lawyer, no one can give you have any assurance of what your sentence will be, since I am going to decide your sentence, and I'm not going to do that now.  I'm going to wait until I receive a presentence report prepared by the probation department, do my own independent calculation of the sentencing guidelines range, consider it and any possible departures from it, and also determine what a reasonable sentence for you is based on the sentencing factors contained in a statute found at 18 U.S.C., Section 3553(a).  Do you understand that?

THE DEFENDANT:  Yes.

THE COURT:  Have you discussed these issues with your lawyer?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  Even if your sentence is different from what your lawyer or anyone else has told you it might be, even if it's different from what you expect or what's contained -- even if it's different from what you expect or what is

N6EVBRIP

contained in the letter from the government, the *Pimentel* letter, you will still be bound by your guilty plea and will not be allowed to withdraw your plea of guilty.

Do you understand that?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  Now, I understand that there is no plea agreement between you and your counsel and the counsel for the government; is that right?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  Now, instead, pursuant to the instructions of the Second Circuit in a case called *United States v. Pimentel*, the government has prepared a letter setting forth its view of what the sentencing guidelines will be at sentencing.  I'm going to mark that letter now as Court Exhibit No. 1.  I'm going to ask my courtroom deputy to show it to you. You can confirm to me whether you've seen it.  After he shows it to you, he's going to recover it and give it to the government, for the government to retain in its possession.

Mr. Fishman.

Do you have Court Exhibit No. 1, the *Pimentel* letter, in front of you?

THE DEFENDANT:  Yes.

THE COURT:  And have you seen this letter?

THE DEFENDANT:  Yes.

THE COURT:  Mr. Fishman, you may recover it and give

N6EVBRIP

it to Mr. Adelsberg.

Did you discuss the letter with your lawyer?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  Did you fully understand what the government is saying in the letter?

THE DEFENDANT:  Yes.

THE COURT:  Now, in the letter, the government indicates its belief that the applicable range under the sentencing guidelines would be life imprisonment; but because the statutorily authorized maximum sentence for Counts One and Two is 40 years of imprisonment, the applicable guidelines sentence is 40 years.  Do you understand that?

THE DEFENDANT:  Yes.

THE COURT:  I want to stress for you that the calculation summarized in that letter constitute the government's view of what the sentencing guidelines are.  They are not binding on you and, more importantly, they are not binding on me.  I have my own obligation to determine the correct guidelines range and what the appropriate sentence for you is in your case.

I'm not saying that I will come up with any range or any number that's different from the one that's contained in the government's letter.  I may agree or I may disagree.  But, in any event, whatever sentence I impose, I will not let you withdraw your plea, even if the sentence I determine is higher

N6EVBRIP

than what the government states -- well, Mr. Adelsberg, I don't think I can impose a sentence higher than the 40 years that's in your *Pimentel* letter; is that correct?

MR. ADELSBERG: That's correct, your Honor.

THE COURT: Okay. So it's just important, Mr. Bridges, that you understand that the *Pimentel* letter is not binding on me and the numbers reflected in the *Pimentel* letter are not binding on me. Do you understand that?

THE DEFENDANT: Yes, your Honor.

THE COURT: Okay. Has anyone made any promises to you or offered you any inducement to plead guilty?

THE DEFENDANT: No, why return.

THE COURT: Has anyone threatened you or forced you to plead guilty?

THE DEFENDANT: No.

THE COURT: Has anyone made a promise to you as to what your sentence will be?

THE DEFENDANT: No, your Honor.

THE COURT: Okay. Would you now tell me in your own words what it is that you did that makes you believe that you're guilty of the charges contained in the indictment. I'm going to ask you to try to speak slowly and clearly for my benefit and for the benefit of the court reporter.

Take your time.

THE DEFENDANT: In late 2020, while a private in the

N6EVBRIP

U.S. Army, I knowingly attempted to provide material support to ISIS by communicating with undercover federal agents who were posing as ISIS adherents.

The support I provided included tactical advice, hand-drawn diagrams of potential troop maneuvers, pages from the *Army Field Manual* regarding troop movements and combat tactics and the propaganda video.

In providing such training and advice, I also knowingly attempted to assist the efforts of ISIS to repel and kill American soldiers engaged in official duties in the Middle East.  I knew at that time that ISIS was a terrorist organization and have engaged in terrorist activity.  I also knew that my conduct was wrong and against the law.

THE COURT:  And I take it, sir, that you did not know that the agents were undercover agents when you spoke to them; is that correct?

THE DEFENDANT:  No, your Honor.

THE COURT:  And you are a national of the United States; is that correct?

THE DEFENDANT:  Yes.

THE COURT:  Mr. Adelsberg, are there any further questions you would have me ask?

MR. ADELSBERG:  Yes, your Honor.

For Count No. Two, the attempted murder on fellow service members, we don't believe that the elements are

N6EVBRIP

actually met by the defendant's statement that he merely meant to repel and engage fellow service members.  I think just based on the actual elements, the defendant needs to allocute to intending to murder fellow officers or employees of the United States.

            MS. COLSON:  Your Honor, I believe he said "repel and kill."

            THE COURT:  I'll ask him the question.

            So, Mr. Bridges, in engaging in that conduct, did you intend to kill other service members?

            THE DEFENDANT:  Yes, your Honor.

            THE COURT:  And did you intend to kill them either while they were engaged in service or as a result of their engaging in service?

            THE DEFENDANT:  Yes.

            THE COURT:  Mr. Adelsberg, does that cover it?

            MR. ADELSBERG:  Yes, your Honor.

            THE COURT:  Any other questions, Mr. Adelsberg?

            MR. ADELSBERG:  Your Honor, the government can proffer to venue, if your Honor would like us to do that now or at a later point.

            THE COURT:  I'll ask you to do that in a moment.  And, Ms. Colson, I'm going to ask you whether there's any dispute as to venue.

            Ms. Colson, do you know of any valid defense that

N6EVBRIP

would prevail at trial, or any reason why your client should not be permitted to plead guilty?

MS. COLSON:  No, your Honor.

THE COURT:  All right.

So, Mr. Adelsberg, would you now both proffer as to venue and summarize for me what the government's evidence would be if the defendant were to go to trial.

Let's start with the proffer as to venue.

MR. ADELSBERG:  Very well, your Honor.

As to venue, specifically, the evidence at trial, your Honor, would show that Mr. Bridges communicated with an online covert employees, an FBI source, in furtherance of his support for ISIS, while this online covert employee was in Manhattan, which included communications about potential targets in and around New York, the purported ambush of U.S. troops in Syria, and the dissemination of a propaganda video featuring the defendant promoting the attack on U.S. troops, all while Mr. Bridges knew that the online covert employee was located in New York.

THE COURT:  Let me ask Mr. Bridges the question.

Did you know that the operative was in New York?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  Okay.

And, Ms. Colson, is there any dispute as to venue?

MS. COLSON:  No, your Honor.

N6EVBRIP

THE COURT:  Okay.  All right.

Would you describe to me, Mr. Adelsberg, what the government's evidence would be if the case were to go to trial.

MR. ADELSBERG:  Yes, your Honor.

Were this case to have proceeded to trial, your Honor, the government expects that the evidence would consist largely of the following categories:

Materials recovered from searches of the defendant's phone, email, and social media accounts, including encrypted communications showing him plotting with purported ISIS operatives to murder fellow service members; photographs, documents, videos, and other materials relating to, among other things, jihadist propaganda; video depicting ISIS executions; videos of ambushes of U.S. troops by Islamist groups; ISIS and ISIS propaganda video made by the defendant while wearing his U.S. Army Kevlar, with an ISIS flag hanging behind him in his barracks; and army field manuals, troop formation diagrams, and illustrations regarding how to ambush U.S. troops sent by the defendant to purported ISIS operatives.

In addition, materials recovered from searches of the defendant's barracks would be introduced at trial, including an ISIS flag, the defendant's military records, including training certificates regarding operational security, anti-terrorism awareness, and counterintelligence threat awareness and reporting; witness testimony from members of Mr. Bridges' unit,

N6EVBRIP

expert testimony concerning ISIS, and a post-arrest interview in which Mr. Bridges admitted that he attempted to supply ISIS with guidance and support and needed to carry out a deadly ambush on U.S. troops.

The evidence, among other things, would show that Mr. Bridges joined the U.S. Army in approximately September 2019, and was assigned as a calvary scout in the 3rd Infantry Division based in Fort Stewart, Georgia.  Mr. Bridges later told an FBI online covert employee, an OCE, who was posing as a female ISIS supporter, that he joined the military to mask his support for ISIS and Hamas.  Consistent with that, beginning in at least 2019, Mr. Bridges began researching and consuming online propaganda promoting jihad and their violent ideology. Mr. Bridges also expressed his support for ISIS and jihad on social media.

In his first year of Army service, Mr. Bridges looked up violent footage on the internet.  In December 2019, for example, he searched "U.S. soldiers shooting," "AK-47 shooting," "AK-47 down site," and "badass jihadi."

In March 2020, Mr. Bridges searched and watched videos on YouTube entitled "U.S. Soldier Combat Footage," and "Wounded by Taliban Sniper, Graphic Content, 18-plus"; and "Truck Hit by RPG."

In April 2020, he researched Muslim warrior quotes; and in August 2020, he searched suicide in Islam and "Green

N6EVBRIP

Beret Ambush."

In October 2020, Mr. Bridges began communicating with the online covert employee who was posing as an ISIS supporter and contact with ISIS fighters in the Middle East.  During these communications, Mr. Bridges expressed frustration with the U.S. military and his desire to aid ISIS by providing them with "ways of fighting, combat techniques, movements, formations, etc."  He told purported ISIS affiliates that he was inspired by ISIS fighters, and that he would betray his Army unit if it engaged in combat against ISIS fighters.

Mr. Bridges then provided training and guidance to purported ISIS fighters who were planning attacks, including advice about potential targets in New York City.  Mr. Bridges also provided the online covert employee with portions of U.S. Army training manual -- of a U.S. Army training manual and guidance about military combat tactics for use by ISIS.

In or about December 2020, after the OCE, the online covert employee, stated that Mr. Bridges should stay safe and avoid being "compromised," Mr. Bridges responded:  *Noah* (ph), meaning "brother" in Arabic.  If I were to be compromised, I would either become a martyr or somehow escape the country.

That same month, Mr. Bridges began to supply the online covert employee with instructions for the purported ISIS fighters on how to attack U.S. forces in the Middle East.

Among other things, Mr. Bridges diagrammed specific

N6EVBRIP

military maneuvers intended to help ISIS fighters maximize the lethality of attacks on U.S. troops.  Bridges further provided advice about the best way to fortify an ISIS encampment to repel an attack by U.S. special forces, including by wiring certain buildings with explosives to kill the U.S. troops.

Then, in January 2021, Mr. Bridges provided the online covert employee with a video of himself in U.S. Army body armor, standing in front of a flag used by ISIS fighters, and making a gesture symbolic of support for ISIS.

Approximately a week later, Bridges sent a second video in which he, using a voice manipulator, narrated a propaganda speech in support of the anticipated ambush by ISIS on U.S. troops.  Since, your Honor, I already proffered about that, I don't need to go over that at this point.

THE COURT:  Okay.  Thank you.

Mr. Bridges, were you able to follow what the prosecutor said?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  Did you do the things that he said you did?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  Mr. Adelsberg, do you agree that there is a sufficient factual predicate for the guilty plea?

MR. ADELSBERG:  Yes, your Honor.

THE COURT:  Do you know of any reason that I should

N6EVBRIP

not accept the defendant's plea of guilty?

MR. ADELSBERG:  No, your Honor.

THE COURT:  Ms. Colson, do you agree that there is a sufficient factual predicate for a guilty plea?

MS. COLSON:  I do.

THE COURT:  And do you know of any reason I should not accept the defendant's plea of guilty?

MS. COLSON:  No, your Honor.

THE COURT:  Mr. Bridges, how do you plead to Count One of the indictment?

THE DEFENDANT:  Guilty.

THE COURT:  How do you plead to Count Two of the indictment?

THE DEFENDANT:  Guilty.

THE COURT:  Okay.  Mr. Bridges, because you acknowledge that you are, in fact, guilty as charged in the indictment, because I am satisfied that you know of your rights, including your right to go to trial, and that you are aware of the consequences of your plea, including the sentence which may be imposed, and because I find that you are knowingly and voluntarily pleading guilty, I accept your guilty plea and I enter a judgment of guilty on Counts One and Two of the indictment.

The probation department will want to interview you in connection with a presentence report that it will prepare.

N6EVBRIP

Ms. Colson, I assume that either you or Ms. Shroff will wish to be present for any interview in connection with that report?

MS. COLSON:  Yes, your Honor.

THE COURT:  I order that there be no interview unless counsel is present.

Mr. Bridges, let me advise you that if you choose to speak to the probation department, make sure that anything that you say is truthful and accurate.  I will read the report carefully, and it is important to me in deciding what sentence to impose.  You and your counsel have a right to examine the report and to comment on it at the time of sentencing.  I urge you to read it and discuss it with your lawyer before sentencing.  If there are any mistakes in it, point them out to your lawyer so that she can bring them to my attention before sentence.  Do you understand all of that?

THE DEFENDANT:  Yes.

THE COURT:  Mr. Fishman, we need a date for sentencing.

Ms. Colson, September 28th, 2 p.m.?

MS. COLSON:  Would it be possible to do it in late October or even early November?  I do think we're going to need extensive time to prepare for the sentencing in this case.

THE COURT:  I assume, Mr. Adelsberg, there's no objection to that?

N6EVBRIP

MR. ADELSBERG:  No objection, your Honor.

THE COURT:  November 2nd at 2 p.m., Ms. Colson?

MS. COLSON:  That's great.  Thank you very much.

THE COURT:  Does that work for you, Mr. Adelsberg?

MR. ADELSBERG:  Yes, your Honor.

THE COURT:  Okay.  Sentencing is set for November 2nd at 2 p.m.

I direct the government to provide the probation officer with its factual statement within seven days.  Defense counsel must arrange for the defendant to be interviewed by probation within the next two weeks.

I want to refer counsel to my individual rules and practices for criminal cases available on the Court's website, which contains some rules regarding sentencing submissions.  In accordance with those rules, the defense submissions are due two weeks prior to sentencing, the government's submissions are due one week prior to sentencing.

Ms. Colson, I assume you know this, but I'll reiterate that there are no page limits on sentencing submissions; so feel free to bring to my attention anything that you believe is appropriate for me to consider in connection with sentencing.

Defendant will remain in custody pending sentencing.

Anything further from the government?

MR. ADELSBERG:  No, your Honor.

THE COURT:  Ms. Colson, anything further?

N6EVBRIP

MS. COLSON:  No.  Thank you, your Honor.

THE COURT:  Okay.  As I indicated before, if the marshals are able to accommodate it, the Court would appreciate if they permit the defendant to just say hello to his father from a distance.

THE MARSHAL:  Yes, your Honor.

THE COURT:  Okay.  Thank you.

Thank you, all.

Have a good afternoon.

*    *    *